IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| M/V BIG BEN, LLC, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 25-0146-WS-C |
| | ) |
| MIGUEL LEON ANTUNEZ, | ) |
| | ) |
|       Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion to dismiss or to abstain and stay proceedings. (Doc. 16). The plaintiff has filed a response and the defendant a reply, (Docs. 18, 19), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion to dismiss is due to be granted and the alternative motion to abstain and stay is due to be denied.

## BACKGROUND

According to the complaint, (Doc. 1), the plaintiff owns and operates a shrimp boat with an eponymous name ("the Vessel"). The defendant ("Antunez") was employed by the plaintiff as captain of the Vessel. Antunez claims that, in December 2023, he suffered personal injuries while working on the Vessel. (*Id*. at 2). Invoking the Declaratory Judgment Act ("the Act"), the plaintiff seeks a declaration that it is not responsible for maintenance and cure, a determination of its past and future liability for maintenance and cure payments, and a declaration of Antunez's rights under the Jones Act and general maritime law. (*Id*. at 3). The plaintiff also seeks to interplead the full value of any maintenance and cure benefits that might be owing, which may exceed the value of the Vessel (the plaintiff's principal asset), and to make defendants in interpleader any healthcare provider, insurer or other person or entity that may claim a right or interest in such benefits. (*Id*. at 4).

The complaint was filed in April 2025. As it turns out, Antunez had filed a complaint in Texas state court in July 2024 regarding the subject incident, naming the plaintiff and another

entity ("Palmer") as defendants and asserting claims under the Jones Act for negligence and under general maritime law for unseaworthiness and maintenance and cure. (Doc. 16-1). Antunez filed a notice of nonsuit without prejudice in January 2025, (Doc. 16-2); according to the plaintiff, he did so shortly before a scheduled hearing on personal jurisdiction. In any event, Antunez filed a substantively identical action in Alabama state court in July 2025 against the same defendants. (Doc. 16-3).

## DISCUSSION

"In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). To be "within [the] jurisdiction" of the Court, there must exist an independent fount of jurisdiction. *E.g., Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1340 (11th Cir. 2018). The complaint asserts admiralty jurisdiction, as well as diversity jurisdiction. (Doc. 1 at 5).

The statutory "actual controversy" requirement mirrors the constitutional "case or controversy" requirement of Article III, section 2. *Provident Life & Accident Insurance Co. v. Transamerica-Occidental Life Insurance Co.*, 850 F.2d 1489, 1491 (11th Cir. 1988). In the statutory context, that requirement looks to "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *GTE Directories Publishing Corp. v. Trimen America, Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). There is no question but that an actual controversy is presented in this action.

Even when an "actual controversy" exists that falls "within [the] jurisdiction" of the district court, a plaintiff has no absolute right to a federal forum. "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). The Act "confer[s] unique and substantial discretion in deciding whether to declare the rights of litigants," and the district court's decision whether to exercise jurisdiction is reviewable on appeal only for abuse of that discretion. *Id*. at 286, 290.

Questions regarding the proper exercise of this discretion most often arise in the context of a federal declaratory judgment action, raising only questions of state law, being pursued alongside a concurrent state court action. "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 495 (1942). In such a situation, "considerations of federalism, efficiency, and comity ... traditionally inform a federal court's discretionary decision." *Ameritas Variable Life Insurance Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005) (internal quotes omitted). The Eleventh Circuit in *Ameritas* identified nine "factors for consideration to aid district courts in balancing state and federal interests" in such a context. *Id*. Antunez argues that the *Ameritas* factors "control the disposition of" his motion, (Doc. 19 at 1), and the plaintiff addresses each of them without either disagreeing with that premise or suggesting any alternative or modified methodology.

Despite the parties' acquiescence, the Court cannot agree that *Ameritas* completely captures the pertinent analysis. By its terms, *Ameritas* addresses the exercise of discretion when the state and federal actions raise only questions of state law, and its "guideposts account for the federalism and comity concerns generated by competing cases, as well as the comparative utility of the declaratory judgment action." *James River Insurance Co. v. Rich Bon Corp.*, 34 F.4th 1054, 1060 (11th Cir. 2022). Federalism and comity concerns are "animated by our system of dual sovereignty" and seek to "preserv[e] the States' interests in resolving issues of state law in their own courts," *id*. at 1058, concerns that are muted if not absent when, as here, federal law governs the dispute.

Unlike the *Ameritas* paradigm, this dispute is governed by federal law. And not just any federal law. Antunez's claims arise under non-statutory general maritime law and under a federal maritime statute, the Jones Act. In such a case, federal admiralty jurisdiction as asserted by the plaintiff exists, "saving to suitors in all cases other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). This clause means, *inter alia*, that admiralty claims brought in state court cannot be removed to federal court under the guise of federal question jurisdiction. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001) (explaining *Romero v. International Terminal Operating Co.*, 358 U.S. 354 (1959)). Even if such claims may

potentially be removed based on diversity jurisdiction,[1] "a Jones Act claim ... is not subject to removal to federal court even in the event of diversity of the parties." *Lewis*, 531 U.S. at 455 (citing 28 U.S.C. § 1445(a) and 46 U.S.C. § 30104(a)).

For the foregoing reasons, the Court employs a modified *Ameritas* analysis, in which the congressionally expressed federal interest in honoring a seaman's election to pursue his Jones Act claims in state court supplements, and largely substitutes for, the state interest in deciding issues of state law. *See generally James River*, 34 F.4th at 1060 (a district court "must capture the breadth of the competing interests").

The Eleventh Circuit decided *Ameritas* in the context of a "parallel state court action." 411 F.3d at 1329; *accord id*. at 1331 & n.4. However, "the existence of a parallel proceeding is not a prerequisite to a district court's refusal to entertain an action under § 2201(a)." *National Trust Insurance Co. v. Southern Heating and Cooling Inc.*, 12 F.4th 1278, 1284 (11th Cir. 2021). Nevertheless, "some of the *Ameritas* guideposts will lean in favor of or against exercising jurisdiction as a function of the degree of similarity between concurrent proceedings." *Id*. at 1287. In particular, "the relevance and weight of the fifth, sixth, seventh, and eighth guideposts is … driven by the degree of similarity between proceedings," while the fourth "weighs more heavily in favor of declining jurisdiction as the similarity of concurrent proceedings increases." *Id*. In assessing the *Ameritas* factors, it is important to bear in mind that *Ameritas* "essentially employ[s] a totality-of-the-circumstances standard," in which its guideposts "are not exhaustive; not all are required; and no one is controlling." *Id*. at 1286.

This Court recently examined the *Ameritas* factors in detail in *American Modern Property and Casualty Insurance Co. v. Pickett*, 676 F. Supp. 3d 1175 (S.D. Ala. 2023). As noted in *Pickett*, three of the factors address federalism and comity, while five address efficiency. *Id*. at 1191. The final factor addresses "procedural fencing." *Id*. at 1184-85. The Court addresses the *Ameritas* factors, as adjusted to account for the absence of state law issues and the non-removability of Jones Act claims, within these categories.

**A. Federalism and Comity.**

The first, fifth, and ninth *Ameritas* factors, respectively, are:

---

[1] *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 219 (5th Cir. 2013).

- "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts";
- "whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction"; and
- "whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action."

411 F.3d at 1331.

Adjusted to account for Congress's intent to privilege a seaman's choice of a state forum for a Jones Act claim, these factors may be restated as:

- the strength of Congress's interest in having the issues raised in the federal declaratory action decided in the state courts;
- whether the use of a declaratory action would increase the friction between our federal courts and Congress and improperly encroach on congressional prerogative; and
- whether there is a close nexus between the underlying factual and legal issues and congressional policy regarding choice of forum.

Congress has expressed its interest clearly: a Jones Act claim brought in state court is to be tried in state court. There could not be a closer nexus between the underlying factual and legal issues and this congressional policy. For a federal court to elect to hear a declaratory judgment action involving the Jones Act despite the pendency of a seaman's state action raising such a claim would tend to create unnecessary friction between co-equal branches of government and undermine congressional policy that the seaman's choice of forum be honored. All three of these factors affirmatively counsel against retention of the declaratory judgment claim.[2]

---

[2] The parties address these factors only from the vantage of the state's interest. The plaintiff denies such an interest but without supplying significant reasoning. (Doc. 18 at 12). Antunez postulates that Alabama has "considerable" interest in resolving the federal issues in the underlying action because the plaintiff is an Alabama entity, and the state "certainly has a strong interest in regulating the tortious conduct of its own citizens." (Doc. 16 at 6; Doc. 19 at 2). The Court is skeptical that the mere naming of an entity based in the state as a defendant automatically triggers a significant state interest in resolving issues of federal law -- especially when, as here, the plaintiff's residence, place of injury, and place of medical treatment all lie elsewhere. Such a connection is far more tenuous than in the habeas context, where the conduct of state judicial proceedings is at issue and the exhaustion requirement "springs from principles of comity, which protect the state court's role in the enforcement of federal law and prevent

**B. Efficiency.**

The second, third, sixth, seventh, and eighth *Ameritas* factors, respectively, are:

- "whether the judgment in the federal declaratory action would settle the controversy";
- "whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue";
- "whether there is an alternative remedy that is better or more effective";
- "whether the underlying factual issues are important to an informed resolution of the case"; and
- "whether the state trial court is in a better position to evaluate those factual issues than is the federal court ...."

411 F.3d at 1331.

As noted, Antunez has sued both the plaintiff herein and a second entity, Palmer. Palmer, however, is not a party to this action. The plaintiff further concedes that this action does not present any question of damages under the Jones Act, as does the state action. (Doc. 18 at 9, 13).[3] The only uniquely useful purpose of this action identified by the plaintiff is a remedy that is in fact equally available in the state action.[4] The state action is all-encompassing, and this

---

disruption of state court proceedings." *Freeman v. Commissioner*, 46 F.4th 1193, 1217 (11th Cir. 2022) (internal quotes omitted). However, to whatever extent Alabama has an interest in resolving questions of federal maritime law simply because the vessel owner is an entity based in Alabama, such interest further weighs against retention of this action.

[3] The plaintiff argues that a federal ruling that Antunez did not experience a compensable injury would settle the controversy. It further argues that even an unfavorable ruling on this issue would "likely" settle the controversy, on the theory that Antunez's medical bills (compensable as maintenance and cure) could exceed the value of all the plaintiff's assets (principally, the Vessel, the plaintiff being uninsured), mooting any controversy regarding the Jones Act or unseaworthiness. (Doc. 18 at 12-13). What *Ameritas* requires, however, is that the federal action "would" resolve the entire controversy regardless of the outcome, not that it *might* do so under some scenarios. The Court further agrees with Antunez that the plaintiff offers no more than speculation regarding the value of its assets vis-a-vis the possible but unknown claims of medical providers for reimbursement. Moreover, the plaintiff fails to account for the potential additional liability and assets of Palmer or for a factfinder's allocation of fault.

[4] The federal complaint purports to invoke rule interpleader, with the purpose of requiring Antunez's medical providers to appear and fight over what might (or might not) be an inadequate purse to satisfy all their potential claims for reimbursement. The plaintiff says it cannot pursue this remedy in state court because the Alabama counterpart to Rule 22 does not allow it to deny liability in whole or in

6

Court is in no better position than the state court to evaluate the underlying factual issues. As discussed in *Pickett*, these circumstances reflect that at least the second and sixth *Ameritas* factors favor dismissal, and the third probably does so. 676 F. Supp. 3d at 1191. The plaintiff concedes that the seventh and eighth factors are neutral. (Doc. 18 at 15).

### C. Procedural Fencing.

The fourth *Ameritas* factor is "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' -- that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable." 411 F.3d at 1331. Antunez accuses the plaintiff of improperly racing to the courthouse, (Doc. 16 at 8), but the Court cannot agree. As noted, Antunez voluntarily nonsuited his Texas action in January 2025. The plaintiff did not file this action until April -- over two months later -- and Antunez thereafter delayed another three months before filing the Alabama action in July. The facts are thus comparable to those in *Westchester Surplus Lines Insurance Co. v. Romar House Association, Inc.*, 2008 WL 5412937 (S.D. Ala. 2008), which this Court found not to favor abstention. *Id*. at *9. The Court concludes likewise in this case.

The plaintiff goes on the offensive, asserting that Antunez engaged in procedural fencing by filing suit in Texas state court, which lacked personal jurisdiction over it and Palmer, and considered re-filing in North Carolina before filing the Alabama action. (Doc. 18 at 6, 14). Even if all this is correct, it does not amount to a "race for res judicata." Moreover, as this Court ruled in *Pickett*, a state plaintiff's procedural fencing is not a consideration under *Ameritas*. 676 F. Supp. 3d at 1185-86.

### D. Summary.

As in *Pickett*, the first, second, fifth, sixth, and ninth guideposts all affirmatively favor dismissal. 676 F. Supp. 3d at 1191. As in *Pickett*, the third guidepost probably favors dismissal but at most "weakly" supports retention. *Id*. at 1184. As in *Pickett*, the fourth, seventh, and

---

part to any or all potential claimants. (Doc. 18 at 11, 14). This is simply incorrect: the state rule mirrors, almost verbatim in relevant respects, the federal rule. *Compare* Fed. R. Civ. P. 22(a)(1) ("Joinder for interpleader is proper even though ... the plaintiff denies liability in whole or in part to any or all of the claimants.") *with* Ala. R. Civ. P. 22(a) ("It is not a ground for objection ... that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants.").

eighth guideposts are effectively neutral. *Id*. at 1191. The *Ameritas* analysis is not a mere math contest, but the weak tug (if any) of the third guidepost cannot possibly overcome the strong pull of the five guideposts supporting dismissal. The result is not close: in the exercise of its informed discretion, the Court concludes that it should not accept jurisdiction over the declaratory judgment claim.[5]

### E. Remedy.

Antunez moves to dismiss this action or, in the alternative, to abstain and stay proceedings. (Doc. 16 at 1, 13). He offers no reason why the Court should prefer one resolution or the other. The plaintiff proposes, with a similar dearth of reasoning, that its federal rule interpleader should continue regardless of the fate of its declaratory judgment claim. (Doc. 18 at 16). For reasons explained below, the Court dismisses the action in its entirety.

Were there some aspect of the declaratory judgment claim that lies beyond the scope of the state action, or were the plaintiff to argue persuasively a realistic possibility the state court will not resolve all issues as to which a federal declaration is sought, it might well be appropriate to retain the declaratory judgment claim pending resolution of the state action. Since neither circumstance is presented, however, the Court declines to do so.

The plaintiff's purported interpleader is due to be dismissed for different reasons. First, the plaintiff has failed to properly plead such a claim. An interpleader action presupposes multiple competing claimants to all or part of a fund, but the complaint names only Antunez himself as a defendant. The plaintiff assumes there may be medical providers that would like a slice of the pie but, rather than name any of them as defendants, the complaint declares that their identity is "unknown" and that the plaintiff "will amend this interpleader" to name them once it discovers who they are. (Doc. 1 at 5). "As a general matter, fictitious-party pleading is not

---

[5] Although unnoted by the parties, a number of sister courts have declined to entertain declaratory judgment actions involving the Jones Act. *E.g., Royal Caribbean Cruises, Ltd. v. Whitefield*, 664 F. Supp. 2d 1270 (S.D. Fla. 2009) (Moore, D.J.); *Great Lakes Dredge and Dock Co. v. Ebanks*, 870 F. Supp. 1112 (S.D. Ga. 1994); *Falk v. Gonzalez-Kakouris*, 2021 WL 7366668 (S.D. Fla. 2021) (Martinez, D.J.); *Emerald Marine Holdings, Ltd. v. Anderson*, 2017 WL 1603848 (M.D. Fla. 2017). In addition to matters noted by the Court, these decisions rest in part on a perceived need to avoid potentially thorny issues regarding *res judicata* and trial by jury -- considerations that implicate federalism and comity concerns as well as efficiency and respect for the expressed will of Congress. These authorities provide further support for the Court's ruling herein.

permitted in federal court." *Estate of West v. Smith*, 9 F.4th 1361, 1368 n.6 (11th Cir. 2021) (internal quotes omitted). There is an exception when "the plaintiff's description of the defendant is so specific as to be at the very worst, surplusage," *id*. (internal quotes omitted), but the complaint does not approach this degree of specificity.

Second, the complaint fails to establish subject matter jurisdiction over an interpleader claim. In the complaint, the plaintiff asserts jurisdiction over this claim based on complete diversity of citizenship under Section 1332. (Doc. 1 at 5). In brief, the plaintiff asserts jurisdiction based on minimal diversity under Section 1335. (Doc. 18 at 10, 16). Either way, the complaint fails to specify the citizenship of any potential claimant other than Antunez and therefore necessarily fails to properly plead diversity, whether complete or minimal. Assuming without deciding that the Court had supplemental jurisdiction under Section 1367 over the interpleader claim while the declaratory judgment claim (supported by admiralty jurisdiction) remained pending, Section 1367(c)(3) bestows discretion on the Court to decline supplemental jurisdiction after dismissing the claim on which original jurisdiction is founded, and it "ordinarily should" so decline. *Royal Canin U.S. A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025). The Court follows that advice here.

Third, statutory interpleader under Section 1335 requires the plaintiff to deposit the money at issue or to give suitable bond, and the plaintiff has done neither in the six months this action has been pending.

## CONCLUSION

For the reasons set forth above, the motion to dismiss is **granted**. This action is **dismissed without prejudice**. The alternative motion to abstain and stay is **denied**.

DONE and ORDERED this 9th day of October, 2025.

                                            s/WILLIAM H. STEELE
                                            UNITED STATES DISTRICT JUDGE